# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ROGER W. AMARAL and**
**WENDY S. AMARAL,**                                        Chapter 7
    Debtors                                                    Case No. 14-15382-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DAVID MADOFF, CHAPTER 7 TRUSTEE,**
    Plaintiff,
v.                                                                Adv. P. No. 15-1130
**ROGER W. AMARAL AND**
**BERNADETTE FURTADO,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the Court are Cross-Motions for Summary Judgment filed by

the Plaintiff, the Chapter 7 Trustee (the "Trustee") of the estate of Roger W. Amaral and

Wendy S. Amaral (collectively, the "Debtors") and the Defendant/Debtor, Roger W.

Amaral ("Amaral" or the "Debtor") with respect to the Trustee's Complaint against the

1

Debtor and his sister, Bernadette Furtado ("Furtado"). Through his two-count Complaint, the Trustee seeks 1) a determination that the interest of the Debtor in real property located at 126 Holly Street, New Bedford, Massachusetts (the "property") is property of the Debtors' bankruptcy estate (Count I); and 2) an order authorizing the Trustee to sell both the interest of the Debtor and co-Defendant Furtado, pursuant to 11 U.S.C. § 363(h) (Count II).

Prior to the filing of the cross-motions for summary judgment, the Trustee and Furtado filed a Joint Motion for Entry of Agreed Order and Judgment pursuant to which they agreed that the Trustee, jointly with Furtado, could sell both the interests of the estate and Furtado in the property without affecting the merits of the Complaint against Amaral.[1] This Court entered the Agreed Order on December 18, 2015.

The Court held a hearing on the cross-motions for summary judgment on March 4, 2016. Counsel submitted briefs and supplement briefs on the legal issue presented, and, thereafter, the Court took the motions under advisement. The issue presented is whether the Debtor had a beneficial interest in the property at the commencement of the case, and, if so, the value of his interest. The parties agree that the material facts necessary

---

[1] The Trustee and Furtado specifically agreed to retain a real estate broker recommended by Furtado, whose commission would not exceed 5% of the gross sales proceeds and whose employment would comply with the requirements of 11 U.S.C. § 327. They further agreed that the proceeds would be distributed first to the payment of valid and perfected liens and second to the payment of the broker's fee and reasonable and customary expenses associated with the costs of sale. From these net proceeds, Furtado and the Trustee agreed that each would each receive 50%. Finally, they agreed that if this Court were to determine that the Debtor had no interest in the Property, their agreement would "become null and void and without any force or effect whatsoever."

to determine the issue are not in dispute and the matter is ripe for summary judgment. *See* Fed. R. Civ. P. 56, made applicable to this proceeding by Fed. R. Bankr. P. 7056.

## II. AGREED FACTS

On December 29, 2015, the Trustee and Amaral filed a Joint Pretrial Memorandum in which they stipulated to the material facts.  On November 18, 2014, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code.  They disclosed their street address as 102 Topham Street, New Bedford, Massachusetts.[2]  The U.S. trustee appointed the Trustee on November 19, 2014.  The Debtors did not disclose on their schedules of assets any interest held by Amaral in the property.  On December 17, 2104, the Trustee issued a Report of No Distribution.  On March 3, 2015 the Court granted the Debtors a discharge, and, on March 6, 2015, the Debtors' Chapter 7 case was closed.

On or about June 12, 2015, the Trustee represented that he learned from Debtors' counsel, that, unbeknownst to the Debtors, as of the petition date, Amaral held a "contingent remainder interest" in the property, and that the other one-half remainder interest was owned by Furtado.  On June 19, 2015, the Trustee filed a Motion to Reopen the Debtors' Chapter 7 case for the purpose of administering Amaral's previously undisclosed interest in the property.  On June 29, 2015, the Court entered an order granting the motion to reopen the Debtors' Chapter 7 case.

---

[2] *The Court may take judicial notice of its own docket. See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").  Amaral's spouse, the joint debtor Wendy S. Amaral, is not a defendant in this adversary proceeding.

On July 6, 2015, the Trustee withdrew his Report of No Distribution and requested a bar date for filing claims. The Court granted the request the request for a bar date and established October 5, 2015 as the deadline for filing proofs of claim. Seven creditors, whose unsecured claims total $3,020.66, filed proofs of claim, although the Debtors listed unsecured claims on Schedule F-Creditors Holding Unsecured Nonpriority Claims of approximately $43,000.

Approximately seven years before the Debtors filed their joint Chapter 7 case, on or about January 10, 2007, the Debtor's parents, Rogerio L. O. Amaral and Maria A. Amaral, owners of the property, executed a Life Estate Deed (the "Life Estate Deed" or the "deed"). The Life Estate Deed provided in pertinent part the following:

> WE, ROGERIO L. O. AMARAL and MARIA A. AMARAL of 126 Holly Street, New Bedford, Bristol County, Massachusetts for consideration paid and in full consideration of Love and Affection grant to ourselves, ROGERIO L. O. AMARAL and MARIA A. AMARAL of 126 Holly Street, New Bedford, Bristol County, Massachusetts a Life Estate with full power to sell, mortgage, convey or otherwise dispose of in fee simple, including the right to convey to ourselves, or to our survivor for no consideration with the remainder to, ROGER WAGNER AMARAL of 102 Topham Street, New Bedford, Bristol County, Massachusetts and BERNADETTE FURTADO of 443 Coggeshall Street, New Bedford, Bristol County, Massachusetts as tenants in common and not as joint tenants with right of survivorship with Quitclaim covenants. . . ."

The deed further provided: "No notice to, or asset by, the grantees in this instrument or their assigns shall be necessary in connection with any exercise of the rights retained by the grantors in this instrument." Amaral was unaware that his father and mother executed the Life Estate Deed, and his parents did not deliver a copy of the deed to him prior to the commencement of the bankruptcy case.

4

Rogerio Amaral died on January 11, 2013 less than one year before the Debtors' petition date of November 18, 2014. His spouse, Maria Amaral, died on February 9, 2015, after the filing of the Debtors' petition, but before the Trustee was discharged and the case was closed. Following the death of Maria Amaral, the remainder interests held by Amaral and Furtado in the property became interests in the estate of fee by operation of law. The property is currently owned by Amaral and Furtado as tenants in common. The assessed value of the property is $166,900.00. The property is not encumbered by any mortgages or other liens. In the parties' Joint Pretrial Memorandum, Amaral disclosed his current address as 126 Holly Street, New Bedford, Massachusetts.

## III. POSITIONS OF THE PARTIES

### A. The Trustee

The Trustee argues that there are no material facts in dispute with respect to the Trustee's claim that Amaral held "a contingent remainder interest" in the property at the commencement of the case. Relying upon 11 U.S.C. § 541(a)(1) of the Bankruptcy Code, which provides that the bankruptcy estate (with exceptions not pertinent here) is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case," the Trustee contends that the Debtor's "continent remainder interest" in the Property is property of the estate. Citing, inter alia, Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3rd 116 (2nd Cir. 2008), cert. denied, 555 U.S. 1213 (2009), and Tringali v. Hathaway Mach. Co., Inc., 796 F.2d 553, 560 (1st Cir. 1986), he emphasizes that property of the estate is broadly construed.

The parties agreed in the Joint Pretrial Memorandum that Amaral held "a contingent remainder interest" in the property. The Trustee contends that "the Deed does not expressly state that Roger must be living after the death of both Rogerio and Maria for his remainder interest to ripen into a fee interest," and that "there is an implicit requirement of survivorship in order for Roger to obtain that interest." Thus, the Trustee, referencing Gordon v. Feldman, 359 Mass. 25, 27 (1971) ("An express requirement of survivorship in a remainder gift renders the remainder contingent."), asserts that "Roger's remainder interest is contingent on that ground as well." Citing Jones v. Mullen (In re Jones), No. AZ-12-1644, 2014 WL 465631 (B.A.P. 9th Cir. Feb. 5, 2014), and In re Crandall, 173 B.R. 836 (Bankr. D. Conn. 1994), he adds that case law is replete with instances where contingent beneficial interests have been held to be property of the estate.

The Trustee further argues that case law supports the position that any post-petition increase in value of property of the estate becomes property of the bankruptcy estate, including the ripening of the contingent remainder interest into a one-half interest in fee, citing In re Croteau, No. 00-10504-JMD, 2001 WL 1757049, *1 (Bankr. D. N.H. July 19, 2001), and In re Oglesby, No. 05-42277, 2006 WL 3590103 (Bankr. W.D. Ky. Dec. 6, 2006). He adds that the contingent remainder interest should be valued when it vested, not on the petition dated, citing Potter v. Drewes (In re Potter), 228 B.R. 422 (B.A.P. 9th Cir. 1999). The Trustee, relying on, among other cases, Whiteside v. The Merchant's Nat'l Bank of Boston, 284 Mass. 165 (1933), and Robertson v. Robertson, 313 Mass. 520 (1943), and distinguishing Williamson v. Hall, 441 B.R. 680 (B.A.P. 10th Cir. 2009), also contends

that state law determines whether a debtor has a legal or an equitable interest in property and that under Massachusetts law, "the question of whether a contingent remainder interest is property of the bankruptcy estate depends upon whether creditors may reach that interest."

The Trustee also relies upon Mass. Gen. Laws ch. 184, § 2 which provides the following:

> If a contingent remainder, executory devise or other estate in expectancy is so granted or limited to a person that in case of his death before the happening of the contingency the estate would descend to his heirs in fee simple, he may, before the happening of the contingency, sell, assign or devise the land subject to the contingency.

Id.[3]  In the Trustee's view, this statute lends support for his position that the "contingent remainder" interest ostensibly held by the Debtor is property of the estate which can be sold. He also relies upon Nash v. Nash, 94 Mass. 345 (1866), a case in which the Supreme Judicial Court addressed an issue raised by a devise under a will.  The court construed the devise "to such of his children as should be living at the decease of their mother" as "a contingent and not a vested interest during her life" and concluded that such an interest would pass to an assignee in bankruptcy under the United States Bankrupt Act of 1841. Id. at 347. The Trustee concludes that "Roger's contingent remainder interest in the New Bedford Property is a cognizable interest pursuant to Section 541(a) of the Bankruptcy Code."

---

[3] Mass. Gen. Laws ch. 184, § 5 provides: "If land is granted or devised to a person and after his death to his heirs in fee, however the grant or devise is expressed, an estate for life only shall vest in such first taker, and a remainder in fee simple in his heirs."

B. <u>Amaral</u>

Amaral contends that the deed executed by his parents did not create a contingent remainder interest, adding that "[i]f the deed created any interest for Roger Amaral, the interest was a remainder subject to total divestment," citing *Black's Law Dictionary*, 1483 (10th ed.). Accordingly, he concludes that Mass. Gen. Laws ch. 184, § 2 does not apply.

The Debtor also argues that "[a]n expectation of inheriting property, which existed at the time of a bankruptcy filing is not property of the estate." The Debtor relies upon In re Hall, 394 B.R. 582 (Bankr. D. Kan. 2008), *aff'd*, 441 B.R. 630 (B.A.P. 10th Cir. 2009), a case in which the court analyzed a "transfer on death" ("TOD") deed under Kansas law. The court interpreted the TOD deed in the same manner as a "payable on death" ("POD") account. Under Kansas law, "[t]he interest of the beneficiary shall be considered not to vest until the death of the owner." 394 B.R. at 595 (citing K.S.A. 9-1215).

Amaral further argues that Massachusetts law supports the position that he did not have an interest in his parents' home notwithstanding the language in the "Life Estate Deed," observing that there are no Massachusetts statutory provisions which address the relationship established by the deed, although he emphasizes the "no notice" language in the deed. The Debtor thus states a third party could receive good title or other interest such as a mortgage without his knowledge.

Amaral also argues that the Life Estate Deed is classic substitute for a will and that the Debtor's parents "were the owners of the house until their deaths." He concludes with the following argument:

One of the essential elements under Massachusetts law is that a deed must be delivered and accepted by a grantee. "It is well settled law in this commonwealth that the delivery of a deed is not complete and effectual without an acceptance by the grantee, or by some one authorized to represent him, or who assumes to represent him, and whose act of acceptance is afterwards ratified." Meigs v. Dexter, 172 Mass. 217, 218, 52 N.E. 75 (1898). Since Roger Amaral did not know of the deed, he could not have accepted the conveyance. This supports the debtor's position that the deed vested title only after the death of Maria and until that time Roger Amaral had no interest in the home.

## IV. DISCUSSION

### A. Summary Judgment Standard

As the court recently stated in Wiscovitch-Rentas v. Villa Blanca VB Plaza LLC (PMC Mktg. Corp.), 543 B.R. 345, 355 (B.A.P. 1st Cir. 2016), Federal Rule of Bankruptcy Procedure 7056, "'[b]y its express terms, . . . incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure.'" Id. (citing Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 762 (1st Cir.1994)). The court added: "'It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law.'" PMC Mktg. Corp., 543 B.R. at 355 (citing Varrasso, 37 F.3d at 763.

Although the parties construe the Life Estate Deed differently, neither party contends that there are material facts in dispute. Because the provisions of the Life Estate Deed are undisputed, this Court is not bound by the parties' legal conclusions based upon the language employed by the grantors, the Debtor's parents.

B. <u>Analysis</u>

Section 363(h) of the Bankruptcy Code allows a trustee to sell property, otherwise

subject to sale under § 363(b)(1), in which a non-debtor has an interest.  It provides:

> (h) Notwithstanding subsection (f) of this section, the trustee may sell both
> the estate's interest, under subsection (b) or (c) of this section, and the
> interest of any co-owner in property in which the debtor had, at the time of
> the commencement of the case, an undivided interest as a tenant in
> common, joint tenant, or tenant by the entirety, only if —
>
>> (1) partition in kind of such property among the estate and
>> such co-owners is impracticable;
>>
>> (2) sale of the estate's undivided interest in such property
>> would realize significantly less for the estate than sale of such
>> property free of the interests of such co-owners;
>>
>> (3) the benefit to the estate of a sale of such property free of
>> the interests of co-owners outweighs the detriment, if any, to
>> such co-owners; and
>>
>> (4) such property is not used in the production, transmission,
>> or distribution, for sale, of electric energy or of natural or
>> synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).  The trustee has the burden of showing that a sale under § 363(h) is

proper. <u>Yopplo v. Schwenker (In re Ziegler)</u>, 396 B.R. 1, 3 (Bankr. N.D. Ohio 2008) (citing

<u>In re Prakope</u>, 317 B.R. 593, 602 (Bankr. E.D.N.Y. 2004)).[4]  Although the Trustee did not

submit an affidavit in support of each of the four required elements pertinent to a § 363(h)

sale, the Court entered an Agreed Oder on December 18, 2015 with respect to the

---

[4] In <u>Ziegler</u>, the court permitted the Chapter 7 trustee to sell the debtor's one-sixth
remainder interest where the holder of the life estate, the debtor's seventy-eight year
old mother, was still alive.  There were, however, no objections to the trustee's
summary judgment motion.

Trustee's agreement with Furtado, and there appears to be no dispute that, if this Court were to conclude that the Debtor held a remainder interest in the property at the commencement of his bankruptcy case, the Trustee would be entitled to sell the estate's interest, together with that of Furtado, which have ripened into a tenancy in common due to his mother's death postpetition.  Thus, the first issue that the Court must determine is whether the Debtor's interest in the property at the commencement of his Chapter 7 case is property of the estate.

To determine whether the Debtor had legal or equitable interest in property for purposes of 11 U.S.C. § 541(a), the Court must begin by analyzing the Life Estate Deed. According to this Court in Braunstein v. Hajjar (In re Hajjar), 385 B.R. 482 (Bankr. D. Mass. 2008), "[d]eeds should be 'construed as to give effect to the intent of the parties, unless inconsistent with some law or repugnant to the terms of the grant.'" Id. at 485 (citing, inter alia, Commercial Wharf E. Condo. Assn. v. Waterfront Parking Corp., 407 Mass. 123, 131, 552 N.E.2d 66 (1990)). The Life Estate Deed executed by the Debtor's parents reflects their intention to retain life estates in the property and to convey the remainder interest in their children upon their death, subject to possible defeasance owing to their power to sell, mortgage or otherwise convey the property.  Courts in Massachusetts recognize that "it has long been well established in this commonwealth that a deed containing a reservation of the premises to the grantor for life operates to seize the grantor of a life estate and by operation of law to vest the remainder in the grantee."  Thayer v. Shorey, 287 Mass. 76, 78-79 (1934) (citations omitted).

In this regard, the Court concludes that 11 U.S.C. § 541(a)(5) is inapplicable.

Section 541(a)(5) provides:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
>> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date--
>>
>>> (A) by bequest, devise, or inheritance; . . .

11 U.S.C. § 541(a)(5).  The Debtor obtained his remainder interest via a deed executed by his parents, not through a bequest, devise or inheritance.[5]  Neither the Trustee nor Amaral contend that § 541(a)(5) applies.

The parties focus significant attention on whether the interest the Debtor acquired by the Life Estate Deed is a contingent remainder interest in the property that would be property of the estate or whether the Debtor held a mere expectancy which is defined, when applied to property, as a "contingency as to possession, that which is expected or hoped for.  At most it is a mere hope or expectation, contingent upon the will and pleasure of the landowner, and hardly reaches the height of a property interest."  *Black's Law Dictionary* 517 (5th ed. 1979).

---

[5] A bequest is "[a] gift by will of personal property; a legacy." *Black's Law Dictionary* 145 (5th ed. 1979).  A devise is "[a] testamentary disposition of land or realty; a gift of real property by the last will and testament of the donor.  Id. 407.  An inheritance is "[p]roperty which descends to heir on the intestate death of another." Id. 704.

Although the parties in the Joint Pretrial Memorandum state that Amaral "held a contingent remainder interest," in the property at the commencement of the case, a statement from which Amaral now attempts to evade, the Court is not bound by the parties' characterization of the remainder interest as contingent.  Notably, the Life Estate Deed did not contain an express requirement of survivorship on the part of the Debtor or his sister.  Therefore, unlike the situation in Gordon v. Feldman, 359 Mass. at 27 ("There is no question that the words 'if living' are commonly employed to express such a contingency"), the remainder interest was not contingent because the deed contained no such language.  Therefore, the Life Estate Deed should be construed consistently with "the rule favoring a construction of interests as vested."  Id. at 28.  Cf. Prince v. Prince, 354 Mass. 588, 592 (1968)(" We note the 'rule of construction of wills that a devise or bequest to the testator's . . . issue is held to be vested unless there is in the will something to show the contrary.'").  For that reason and the reasons set forth below, the Court concludes that the Debtor had a vested remainder interest.

 According to leading commentators,

> Vested remainders are those remainders that are ready to take effect, and include any remainders that are not contingent remainders. Therefore, they are remainders to persons who are identifiable at the time of the initial conveyance and for whom there are no conditions precedent to their taking of an estate, other than the natural termination of the prior possessory estate.

> Contingent remainders are those remainders whose vesting is dependent upon the occurrence of a certain event or the satisfaction of a condition precedent. More aptly put, "[a] contingent reminder [sic] is merely the possibility or prospect of an estate." H. Thorndike, *Tiffany on Real Property* § 320 (3d ed. 1939 & Supp. 2006). For instance, a remainder that will take effect only if the individual reaches the age of eighteen is contingent until

the individual reaches the proscribed age, at which time the remainder will become vested. Pursuant to G.L. c. 184, § 3, contingent remainders are effective future interests in this Commonwealth, but are subject to the statutory rule against perpetuities, G.L. c. 184A, § 1.

*A power to convey the fee held by a life tenant does not have the effect of converting vested remainders into contingent ones. See* <u>Robertson v. Robertson</u>, 313 Mass. 520, 524 (1943); <u>Crowell v. Chapman</u>, 257 Mass. 492, 499 (1926). Such a remainder remains vested, but is made subject to divestiture. *See* <u>Robertson v. Robertson</u>, 313 Mass. at 524.

Bruce H. Bagdasarian, Darren M. Baird and David H. Morse, Real Estate Title Practice in Massachusetts, RETITLE MA-CLE 5-1, *Deeds*, § 5.9.3 Remainders (3d ed. 2016)(emphasis supplied). *See also* 14C Mass. Prac., *Vested Remainder*, § 15.18 (4th ed.), and 14C Mass. Prac., *Contingent Remainder-Generally*, § 15.19 (4th ed.).

Based upon the difference between vested and contingent remainders described in the materials cited above, the Court concludes that the remainder interest held by the Debtor and his sister was not contingent simply because their parents retained the right to dispose of the property.[6]  In <u>Robertson v. Robertson</u>, 313 Mass. 520 (1943), the court, interpreting a will, stated:

---

[6] This case is distinguishable from <u>Lassman v. McGuire (In re McGuire)</u>, 209 B.R. 580 (Bankr. D. Mass. 1997), in which this Court determined that a codicil to a will executed by the debtor's mother after the debtor filed his bankruptcy petition pursuant to which she revoked "[a]ll bequests, devises and legacies" to her son was effective, such that 11 U.S.C. §§ 105(a) and 541(a) could not serve to undermine her intention.  This Court stated:

> [T]he Debtor had no more than an expectation of inheriting property from his mother at the time of her death. His mother could have revoked her will at any time and disinherited both her son and her daughter. The execution of the codicil was within her prerogative as she had no duty to underwrite the creditors of her son's bankruptcy estate. The property that the Trustee asks this Court to determine to be property of the Debtor's bankruptcy

*A remainder after a life estate is none the less vested because subject to being defeated by the exercise of a power of sale if, apart from the existence of the power, it would be a vested remainder.* In these circumstances such a remainder is a vested remainder subject to being divested by the exercise of the power rather than a contingent remainder. <u>Dana v. Dana</u>, 185 Mass. 156, 160, 70 N.E. 49; <u>Ball v. Holland</u>, 189 Mass. 369, 75 N.E. 713, 1 L.R.A., N.S., 1005; <u>Reed v. Reed</u>, 194 Mass. 216, 218, 80 N.E. 219; <u>American Baptist Publication Society v. Lufkin</u>, 197 Mass. 221, 223, 224, 83 N.E. 401; <u>Coates v. Lunt</u>, 210 Mass. 314, 318, 96 N.E. 685; <u>Crowell v. Chapman</u>, 257 Mass. 492, 497-499, 154 N.E. 397. (The words 'contingent remainders', 257 Mass. on page 497, 54 N.E. on page 400, of the <u>Crowell</u> case obviously are not used in their technical sense since the remainders in question are referred to as 'vesting in right  at the death' of the testator.) *Sugden on Powers*, 8th Ed., pages 452, 453. And in our opinion the conditional language with reference to the gift in default of sale under the power, 'In case that at the death of the survivor of said Grace M. Morse and said Alvah W. Morse said homestead has not then been sold,' does not of itself preclude this result so far as the effect of the existence of the power to sell is concerned. *See* <u>Dana v. Dana</u>, 185 Mass. 156, 157, 160, 70 N.E. 49; <u>Harvard College v. Balch</u>, 171 Ill. 275, 282, 49 N.E. 543. If the remainder in one half part of the 'homestead estate' given to Ernest F. Pope was contingent rather than vested, it is for reasons other than the existence of the power of sale.

<u>Robertson v. Robertson</u>, 313 Mass. at 524-25 (emphasis supplied).  Thus, even though the Debtor's parents could have disposed of the property, that possibility, did not transform the Debtor's vested remainder interest into a contingent interest.  The Supreme Judicial Court's decision in <u>Robertson</u> compels that conclusion.

---

estate belonged exclusively to Margaret Lee McGuire. Indeed, the Trustee recognized that his arsenal of avoiding powers under 11 U.S.C. §§ 544, 547, 548 and 549 were completely ineffective to bring the property into the Debtor's estate because no transfer of an interest of the Debtor in property took place. Rather, the Debtor's mother chose to provide for the transfer of her property to someone other than the Debtor. The Trustee's reliance upon § 105 is unavailing because this Court finds that no federal policies are implicated by a non-debtor's decisions about the distribution of her property through a will.

<u>In re McGuire</u>, 209 B.R. 580, 582-83 (Bankr. D. Mass. 1997)

In <u>Kovacs v. Sargent (In re Sargent)</u>, 337 B.R. 661 (Bankr. N.D. Ohio 2006), the court elaborated upon the relationship between life estates and remainder interests, observing the following:

> With a life estate, partition is not allowed under state law as between the life tenant and the remainderman as each interest is a separate estate. On the other hand, partition is generally permissible with those three categories of co-owner interests set forth in § 363(h) [i.e., (1) a tenancy in common; (2) a joint tenancy; or (3) a tenancy by the entireties]. 41 Ohio Jur. 3D *Cotenancy*. §§ 62–63. Thus, § 363(h)'s delineation of property into three limited categories may be read as merely an extension of this principle to the bankruptcy context. At the very least, given the great dissimilarities between a life estate and those three categories of co-ownership specified in § 363(h), it can only be concluded that the exclusion of a life estate from § 363(h) was not simply accidental. The canon of *expressio unius est exclusio alterius* therefore applies (to express or include one thing implies the exclusion of another). *See* <u>United States v. Vonn</u>, 535 U.S. 55, 65, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002) (the canon has force when the items expressed are members of an "associated group or series," justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence). Other courts have come to the same conclusion: <u>Geddes v. Livingston (In re Livingston)</u>, 804 F.2d 1219 (11th Cir.1986), holding that the trustee could sell the debtor's life estate and contingent remainder, along with the wife's life estate as a tenant in common, but could not force a sale of the wife's contingent remainder in survivorship; <u>Rubin v. Burns (In re Burns)</u>, 73 B.R. 13 (Bankr. W.D. Mo.1986), life tenants and remaindermen are not co-owners having undivided interests who are intended to be the subjects of § 363(h); <u>In re Independence Village</u>, 52 B.R. 715 (Bankr. E.D. Mich. 1985), in dictum, mentioning that § 363(h) does not authorize sale of the interests of life tenants.

> Based then on this analysis, the Court must conclude that § 363(h) does not permit the Trustee, as the successor to the Debtor's remainderman interest, to sell the property in which the Debtor's mother currently maintains a life estate interest. However, *this decision in no way prohibits the Trustee from seeking to sell the Debtor's remainderman interest in the property free and clear of the Debtor's brother who, also having a remainderman interest in the property, would simply be a co-owner for purposes of § 363(h).*

In re Sargent, 337 B.R. at 667 (emphasis supplied).  Thus, if the Debtor's mother were alive, the Chapter 7 Trustee could sell the Debtor's remainder interest, although his mother's life estate could not be affected.  This is so because, as the court recognized in Wheeler v. United States, 116 F.3d 749 (5th Cir. 1997), which determined that a sale of the remainder interest for its actuarial value constitutes adequate and full consideration for estate tax purposes, a remainder interest has a monetary value.  The United States Court of Appeals for the Fifth Circuit specifically stated: "both interests, the life estate and the remainder interest, are capable of valuation." Id. at 762.[7]

The Court concludes that regardless of whether the Debtor's remainder interest is characterized as vested or contingent, his interest was property of the estate at the commencement of the case.  If Mass. Gen. Laws ch. 184, § 2 would permit the sale, assignment or devise of a contingent interest, there would appear to be no justification for a different rule applicable to vested remainder interests.  Moreover, this case is virtually indistinguishable from the case of In re Oglesby, No. 05-42277, 2006 WL 3590103 (Bankr. W.D. Ky. Dec. 6, 2006).[8]  In Oglesby, the court rejected the debtor's contention

---

[7] In this regard, the Court is unpersuaded by In re Hall, 394 B.R. 582 (Bankr. D. Kan. 2008), aff'd, 441 B.R. 630 (B.A.P. 10th Cir. 2009), cited by Amaral, which involved a TOD deed.

[8] The facts in Oglesby were as follows:

> On September 9, 2002, the debtor's parents conveyed a house and lot, valued at $32,900.00 in the consideration certificate, to the debtor reserving a life estate. The debtor filed for Chapter 7 bankruptcy relief on September 22, 2005. She did not list this interest on Schedule A. On April 14, 2006, the debtor filed an amendment to her schedules disclosing her interest in the real property. On April 18, 2006, the Trustee filed an Adversary Proceeding

that because his interest was limited at the time of the petition, it could not change

character and be sold by the trustee, stating: "What the debtor fails to realize is that this

property was already property of the estate, and that it was not "acquired" after the

commencement of the case.  Once the case was filed, the Trustee possessed every interest

previously possessed by the debtor, including her vested remainder interest. When the

debtor's father passed, the Trustee's interest in the property evolved from a remainder

interest to a fee simple interest." Id. at *2.

In the present case, the facts are undisputed that the Debtor was unaware of his

parents' Life Estate Deed and that the deed was not actually delivered to him before the

---

against the life estate to force a sale of the lot. The Trustee subsequently
learned that the debtor's step mother passed away several years prior to the
filing of the bankruptcy petition and that the debtor's father passed away
on January 7, 2006. Consequently, the Trustee dismissed his adversary and
filed this motion to sell in the main case.

\*\*\*

At the time the bankruptcy case was filed, the debtor owned a vested
remainder interest in the real property. Title and ownership rested with the
debtor, with the grantors retaining a possessory life estate. When the debtor
filed this bankruptcy case, only the remainder interest was included in the
bankruptcy estate, as the filing of bankruptcy does not confer upon the
trustee any greater rights in the property than that held by the debtor.
Demczyk v. The Mutual Life Ins. Co. of New York (In re Graham Square,
Inc.), 126 F.3d 823, 831 (6th Cir. 1997) (property limited in the hands of a
debtor is similarly limited in the hands of the trustee). Until the passing of
the grantors, the Trustee could only sell the debtor's interest, the limited
remainder interest. However, with the passing of the debtor's father on
January 7, 2006, the remainder interest merged with the life estate granting
the debtor a fee simple interest, which is fully subject to sale.

2006 WL 3590103, at *1-2.

commencement of the case.  In <u>Federman v. Garten (Matter of Garten)</u>, 52 B.R. 497 (Bankr.

W.D. Mo. 1985), the court addressed the debtor's argument that the property in dispute

should not be included in the bankruptcy estate because the interest had not "vested."

<u>Garten</u>, 52 B.R. at 498. The court held that the remainder interest vested immediately

upon the conveyance of documents that created the life estate. <u>Id.</u>  Nevertheless, the court

observed:

> [I]t is stipulated by and between the parties to this action that the general
> warranty deed of March 19, 1979, was "filed with the County Recorder of
> Putnam County on March 19, 1979, and delivered to the Gartens." That
> delivery "gives the instrument force and effect" and signifies an intention
> "to pass immediate title to the grantee." <u>Cleary v. Cleary</u>, 273 S.W.2d 340,
> 345, 346 (Mo.1954); <u>Wilkie v. Elmore</u>, 395 S.W.2d 168, 172 (Mo. 1965). And,
> generally, under Missouri law, "(w)hen a deed conveying a fee reserving a
> life interest in the grantor is delivered to the grantee, title to the fee passes
> subject to a life estate even though a clause in the deed following the
> reservation provides the deed is to take effect upon the death of the
> grantor." <u>Barker v. Barker</u>, 219 S.W.2d 391, 392 (Mo. 1949). In order to
> postpone the vesting of any estate in the grantee, the grantor must
> specifically so state in the deed or else take measures to ensure that the deed
> is not delivered to the grantee. <u>Beauchamp v. Beauchamp</u>, 381 S.W.2d 804,
> 806 (Mo.1964).

<u>Matter of Garten</u>, 52 B.R. at 499-500.  Based upon the language employed by the Debtor's

parents in the Life Estate Deed, this Court can discern no intention on their part to

postpone the vesting of the remainder interests conveyed to Amaral and his sister.  Thus,

the failure to deliver the deed is not dispositive of the bankruptcy estate's interest in the

Debtor's remainder interest.  Moreover, as noted by Bagdasarian, et al., although "a deed

is not effective and is not considered delivered until accepted by a grantee or an

authorized representative of a grantee," actual delivery is not dispositive as "[a]cceptance

may be actual or implied by the conduct of the grantee. Where acceptance is implied by

the grantee's conduct, the conduct must occur after the execution of the deed and with knowledge thereof."  Bruce H. Bagdasarian, Darren M. Baird and David H. Morse, Real Estate Title Practice in Massachusetts, RETITLE MA-CLE 5-1, *Deeds*, § 5.8.8 Acceptance, (3d ed. 2016*)*.  In the instant case, the Debtor did not reside in the property at the commencement of the case, but does so now.  Accordingly, there would appear to be implied acceptance of the deed.

Consistent with the authorities cited above, the Court concludes, despite the "contingent remainder interest" label employed by the parties in their Joint Pretrial Memorandum, that Amaral held a vested remainder interest in the property upon the commencement of his bankruptcy case, subject to defeasance in the event that the life estate holders elected to dispose of the property.  Moreover, the Court concludes that that interest was property of the bankruptcy estate under the expansive interpretation of § 541(a).  The decision of Amaral's parents not to deliver the deed to him has no effect on this Court's decision.  They did specifically state in the Life Estate Deed that the remainder interests granted to their children were not to take effect at the time of the execution of the Life Estate Deed, although it appears that they did not actually deliver the deed to either Amaral or his sister before their deaths.  Because they reserved the right to dispose of the property, their decision to retain the deed makes sense and cannot serve to deprive the estate of a valuable interest.

## V. CONCLUSION

In view of the foregoing, and in the absence of any genuine issues of material facts as to the elements of a sale under 11 U.S.C. § 363(h), the Court grants the Trustee's Motion

for Summary Judgment and denies the Debtor's Motion for Summary Judgment.  The

Court shall enter an order authorizing the Trustee to sell the vested remainder interest

that the Debtor possessed at the commencement of his bankruptcy case that has now

ripened into a tenancy in common with his sister.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  April 20, 2016