UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ROGER W. AMARAL and**
**WENDY S. AMARAL,**                                         Chapter 7
    Debtors                                             Case No. 14-15382-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DAVID B. MADOFF, CHAPTER 7 TRUSTEE,**
    Plaintiff,
v.                                                          Adv. P. No. 15-1130
**ROGER W. AMARAL AND**
**BERNADETTE FURTADO,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the Motion for Attorney's Fees and Costs (the "Motion") filed by Bernadette Furtado ("Furtado"). Furtado seeks an order from this Court requiring Codefendant, Roger W. Amaral (the "Defendant" or the "Debtor"), to pay her attorney's fees and costs associated with her defense of this adversary proceeding in accordance with Fed. R. Bankr. P. 7054(b). In her Motion, Furtado asserted that "she is a completely innocent third party in this matter, and has been forced into this Adversary proceeding due to the actions and inaction of her brother, the Defendant Roger Amaral with whom she shared title to a parcel of real estate." She added that due

1

to the Debtor's conduct "she was obligated to incur substantial attorney's fees and costs in order to obtain the sale of her real property."

The Plaintiff in this adversary proceeding, David B. Madoff, the Chapter 7 Trustee of the bankruptcy estate of Roger W. Amaral and Wendy S. Amaral (collectively, the "Debtors"), filed a Statement of No Position with respect to Furtado's Motion. He observed: "By her motion, Furtado seeks attorney's fees *only against co-Defendant Roger W. Amaral, and only from the surplus funds that he may receive in the underlying Chapter 7 proceeding.*" (emphasis in original). The Trustee added that "the bankruptcy estate has no stake in the outcome of this motion. . . ."

The Debtor filed an Opposition to Furtado's Motion. He stated that Fed. R. Civ. P. 54, which is made applicable to this proceeding by Fed. R. Bankr. P. 7054, does not create "a substantive right to attorney's fees" or change the American rule pertaining to payment of attorney's fees. The Debtor added that a motion under Fed. R. Civ. P. 54 must be filed within 14 days after entry of judgment and that, by any measure, Furtado's motion is untimely.

Furtado filed a Response to the Debtor's Objection. In her Response, she argued that no final judgment has entered in this adversary proceeding and that the Court's order of April 20, 2016 is not a final order. She maintained that all federal courts have inherent authority to sanction attorneys, and bankruptcy courts also have authority to sanction attorneys under 11 U.S.C. § 105(a).

The Court heard the Motion on March 22, 2017 at which time Furtado's counsel argued that the Debtor's conduct was "frivolous and vexatious" and "was intended to

2

delay th[e] ultimate sale" of the property located at 146 Holly Street, New Bedford, Massachusetts (the "property'), which was the subject of the adversary proceeding. Following the hearing, the Court took the matter under advisement. The material facts needed to resolve the issue are not in dispute and neither of the parties requested an evidentiary hearing.

## II. BACKGROUND

On November 18, 2014, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code.[1] The U.S. trustee appointed the Trustee on November 19, 2014. On their petition, the Debtors disclosed their street address as 102 Topham Street, New Bedford, Massachusetts. They did not disclose on their schedules of assets any interest held by the Defendant in the property. On December 17, 2104, the Trustee issued a Report of No Distribution. On March 3, 2015 the Court granted the Debtors a discharge, and, on March 6, 2015, the Debtors' Chapter 7 case was closed.

On or about June 12, 2015, the Trustee learned from counsel to the Debtors that, unbeknownst to them, as of the petition date, the Defendant held a "contingent remainder interest" in the property, and that the other one-half remainder interest was owned by Furtado. On June 19, 2015, the Trustee filed a Motion to Reopen the Debtors' Chapter 7 case for the purpose of administering the Defendant's previously undisclosed

---

[1] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket."). Roger W. Amaral's spouse, the joint debtor Wendy S. Amaral, is not a defendant in this adversary proceeding.

3

interest in the property. On June 29, 2015, the Court entered an order granting the motion to reopen the Debtors' Chapter 7 case.[2]

The Trustee filed a Complaint against the Debtor and Furtado. Through his two-count Complaint, the Trustee sought 1) a determination that the interest of the Debtor in the property was property of the Debtors' bankruptcy estate (Count I); and 2) an order authorizing him to sell both the interest of the Debtor and the interest of Codefendant Furtado, pursuant to 11 U.S.C. § 363(h) (Count II). Following the filing of a Joint Pretrial Memorandum, the Trustee filed a Motion for Summary Judgment. Subsequently, the Defendant also filed a Motion for Summary Judgment.

Prior to the filing of the cross-motions for summary judgment, the Trustee and Furtado filed a Joint Motion for Entry of Agreed Order and Judgment pursuant to which they agreed that the Trustee, jointly with Furtado, could sell both the interests of the estate and Furtado in the property without affecting the merits of the Complaint against the Defendant. This Court entered the Agreed Order on December 18, 2015. The Trustee and Furtado specifically agreed to retain a real estate broker recommended by Furtado, whose commission would not exceed 5% of the gross sales proceeds and whose employment would comply with the requirements of 11 U.S.C. § 327. They further

---

[2] On July 6, 2015, the Trustee withdrew his Report of No Distribution and requested a bar date for filing claims. The Court granted the request for a bar date and established October 5, 2015 as the deadline for filing proofs of claim. Seven creditors, whose unsecured claims total $3,020.66, filed proofs of claim, although the Debtors listed unsecured claims on Schedule F-Creditors Holding Unsecured Nonpriority Claims of approximately $43,000.

agreed that the proceeds would be distributed first to the payment of valid and perfected liens and second to the payment of the broker's fee and reasonable and customary expenses associated with the costs of sale. From net proceeds, Furtado and the Trustee agreed that each would each receive 50%. Finally, they agreed that if this Court were to determine that the Debtor had no interest in the Property, their agreement would "become null and void and without any force or effect whatsoever."

The Court heard the cross-motions for summary judgment on March 4, 2016. The issue presented by the cross-motions was whether the Debtor had a beneficial interest in the property at the commencement of the case, and, if so, the value of that interest. On April 20, 2016, this Court granted the Trustee's Motion for Summary Judgment and denied the Debtor's Motion for Summary Judgment, thereby finding that the Debtor had a vested remainder interest in the property and authorizing the Trustee to sell the vested remainder interest that the Debtor possessed at the commencement of the bankruptcy case that had ripened into a tenancy in common with Furtado. *See* Madoff v. Amaral (In re Amaral), 550 B.R. 1 (Bankr. D. Mass. 2016). In the order accompanying its memorandum, the Court stated:

> In view of the proofs of claim on file in this Chapter 7 case, which total only $3,020.66, compared to the value of the interest of the Debtor/Defendant in the property, which far exceeds that sum, the Trustee is not authorized to sell the property at this time, pending further order of the Court. The Court shall afford the parties a reasonable opportunity to resolve their dispute or pursue other appropriate resolutions of this dispute, including a structured dismissal or conversion of the Chapter 7 case to a case under Chapter 13.

The Court conducted a status conference on May 20, 2016 at which the Debtor and the Trustee reported a settlement. On June 8, 2016, in the main case, the Trustee filed a

5

Motion to Compromise Adversary Proceeding No. 15-1130, together with a Settlement Stipulation. Pursuant to the settlement, the Defendant agreed, inter alia, that "[i]n full settlement of the claims of the Trustee, Amaral shall make a payment in the amount of $21,000.00 to the Trustee . . . [which] . . . Settlement Payment shall be due and payable at the time that the New Bedford Property is sold." The Defendant agreed to act cooperatively with Furtado and to take all reasonable steps to actively market the property without any cost or expense, including any broker's commission, to the bankruptcy estate. The Defendant also granted the Trustee a mortgage, to be held in escrow, to secure the Trustee's receipt of his share of the sale proceeds. In addition, the parties agreed that if the Defendant and Furtado could not sell the property within six months, the Trustee could sell the property consistent with his settlement with Furtado.

Furtado objected to the Motion to Compromise, asserting that the Settlement Stipulation did not "provide adequate protection of her interest in the real property" and complaining that the Defendant had not paid any portion of the rent from the property to her and had not provided her with an accounting. She also complained that the compromise did not require the Defendant to keep the property insured and to pay real estate taxes. In addition to objecting to the compromise, Furtado filed a "Motion to Vacate Stay" in order to proceed with a Petition to Partition, which motion elicited objections from the Trustee and the Defendant.

On July 19, 2016,[3] the Court denied the Trustee's Motion to Compromise and granted Furtado's Motion to Vacate the Stay. Although the Debtors moved the Court to reconsider that order, they withdrew their motion on September 12, 2016, approximately two weeks before the Trustee filed an Expedited Motion for Authority to Sell Assets Free and Clear by Private Sale pursuant to which he proposed to sell the property. In his motion, the Trustee stated:

> At a hearing before the Probate Court on July 28, 2016, at which Furtado, the Debtors [sic] and the Trustee appeared, the Probate Court entered an Order, agreed upon by Furtado and the Trustee, authorizing the sale of the Property by Furtado, but subject to Bankruptcy Court approval. Furtado thereafter retained a real estate broker and marketed the Property for sale.
>
> ***
>
> . . . Pending approval of the Bankruptcy Court, and in accordance with the terms of the Probate Order, Furtado and the Debtor have accepted an offer in the amount of $150,000.00 (the "Sale Price") from the Buyers.

The Court, after notice and an opportunity for a hearing, granted the Trustee's Motion for Authority to Sell on October 17, 2016.

On January 27, 2017, the Trustee filed a Statement of Sale Pursuant to Fed. R. Bankr. P. 6004(f)(1), in which he represented that the property located at 126 Holly Street, New Bedford, Massachusetts sold on November 21, 2016 for a sale price of $150,000. Furtado filed her Motion for Attorney's Fees and Costs in the adversary proceeding approximately two months earlier on November 30, 2016.

---

[3] The order was entered on July 20, 2016.

**III. POSITIONS OF THE PARTIES**

In her Motion, Furtado represented, among other things, 1) that after her mother became ill and entered a nursing home in November of 2014, the Defendant moved into 126 Holly Street, New Bedford, Massachusetts, a three-family property once occupied by their mother; 2) that, on February 10, 2015, the day after the mother's death, the Defendant recorded a Declaration of Homestead on the property; 3) that, on March 7, 2015 [sic],[4] Furtado, through her counsel, mailed the Defendant a letter seeking an agreement whereby the Defendant would (a) list the property for sale with a mutually agreeable real estate broker; (b) deposit all collected rents from any tenant into a joint bank account from which all bills related to the home would be paid; (c) pay rent to Furtado for the Defendant's use of an apartment; (d) provide proof of maintenance of hazard and casualty insurance; and (e) provide an accounting; 4) that Furtado provided the Defendant with a listing agreement for a period of six months from May 1, 2015 to November 1, 2015; 5) that the Defendant refused to execute the listing agreement; 6) that the Defendant did not cooperate in listing the property or comply with any of the other requests set forth in (a) through (e); 7) that Furtado filed a Petition to Partition on May 12, 2015 in the Bristol County Probate and Family Court; and 8) that, on July 6, 2015, the Trustee commenced the instant adversary proceeding. Based upon those assertions, as well as her contention that the Debtor knew of his life estate interest in the property at the commencement of his case and failed to disclose it, Furtado contended that at all times

---

[4] The letter was dated March 4, 2015. The Chapter 7 Trustee was discharged and the Debtor's case originally was closed on March 6, 2015.

8

she was an "innocent party" and acted reasonably and in good faith. She further argued that the Debtor's litigation conduct was frivolous and delayed the adversary proceeding and that she should be entitled to attorney's fees of $14,950 (59.80 hours x $250 per hour), as well as costs of $191, for a total of $15,141.

The Defendant asserted that he was unaware of his interest in the property at the time he commenced his bankruptcy case. He argued that he believed that he had a non-frivolous argument that the Trustee should not have been entitled to any funds from a disposition of the property he inherited. He also added that nothing he filed was filed in bad faith and that he took no position that was frivolous as the litigation involved "a rather obscure issue of property law."

**IV. DISCUSSION**

A. Applicable Law

Furtado in her Motion relied on Fed. R. Bankr. P. 7054 and Fed. R. Civ. P. 54(d)(2)(A)-(C) and (E) which is made applicable to this proceeding by Fed. R. Bankr. P. 7054(b)(2)(A). Furtado did not specifically reference Fed. R. Bankr. P. 9011 in her papers or 28 U.S.C. § 1927. Cases she cited in her Response, however, contain references to Rule 9011 as well as the inherent power of federal courts to impose sanctions, but not 28 U.S.C. § 1927.

1. Fed. R. Bankr. P. 7054and Fed. R. Civ. P. 54

Federal Rule of Bankruptcy Procedure 7054(b)(1) provides:

> The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides. Costs against the United States, its officers and agencies shall be imposed only to the extent

9

> permitted by law. Costs may be taxed by the clerk on 14 days' notice; on motion served within seven days thereafter, the action of the clerk may be reviewed by the court.

Fed. R. Bankr. P. 7054(b)(1). As noted above, Bankruptcy Rule 7054(b)(2)(a) makes Fed. R. Civ. P. 54(d)(2)(A)-(C) and (E) applicable to adversary proceedings. Rule 54(d)(2) provides in pertinent part the following:

> (A) **Claim to Be by Motion**. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
> (B) **Timing and Contents of the Motion**. Unless a statute or a court order provides otherwise, the motion must:
> > (i) be filed no later than 14 days after the entry of judgment;
> > (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
> > (iii) state the amount sought or provide a fair estimate of it; and
> > (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.
> (C) **Proceedings**. Subject to Rule 23(h), the court must, on a party's request, give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78. The court may decide issues of liability for fees before receiving submissions on the value of services. The court must find the facts and state its conclusions of law as provided in Rule 52(a). . . .
> (E) **Exceptions**. Subparagraphs (A)-(D) do not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. § 1927.

Fed. R. Civ. P. 54(d)(2)(A)-(C), and (E).

      2. Inherent-Power Sanctions

Federal Court have the authority to impose "inherent-power sanctions. *See* Charbono v. Sumski (In re Charbono), 790 F.3d 80, 86 (1st Cir. 2015), Knight v. Luedtke (In re Yorkshire, LLC), 540 F.3d 328, 332 (5th Cir. 2008); Gwynn v. Walker (In re Walker),

532 F.3d 1304, 1309 (11th Cir. 2008), *cert. denied,* 556 U.S. 1181 (2009); Hale v. U.S. Trustee, 509 F.3d 1139, 1148 (9th Cir. 2007). For example, in Walker, the court observed:

> A party who moves for sanctions under Bankruptcy Rule 9011 must follow a two-step process. *See* Fed. R. Bankr. P. 9011(c)(1)(A). The party first must serve the motion on the opposing party and then, at least twenty-one days later, file the motion with the court. Id. This process provides a "safe harbor" in which the offending party can avoid sanctions by withdrawing or correcting the challenged document or position after receiving notice of the alleged violation. Although this Circuit has never addressed whether a motion for sanctions under Rule 9011 may be filed after a court has ruled on the offending motion, the Second, Fourth, and Sixth Circuits have concluded that a motion under Federal Rule of Civil Procedure 11, which is "substantially identical" to Rule 9011, Mroz, 65 F.3d at 1572, cannot be filed "[i]f the court disposes of the offending contention before the twenty-one day 'safe harbor' period expires." Ridder v. City of Springfield, 109 F.3d 288, 295 (6th Cir.1997); *see also* Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 389-90 (4th Cir. 2004) (en banc); In re Pennie & Edmonds LLP, 323 F.3d 86, 89 & nn.1-2 (2d Cir. 2003). As the Sixth Circuit explained, "any other interpretation would defeat the rule's explicit requirements." Ridder, 109 F.3d at 295. Under that interpretation of Rule 9011, Walker's argument on cross-appeal fails.
>
> \*\*\*
>
> We agree with the Second, Fourth, and Sixth Circuits that the service and filing of a motion for sanctions "must occur prior to final judgment or judicial rejection of the offending" motion. Id. at 297. Any argument to the contrary renders the safe harbor provision a mere formality. The provision cannot have any effect if the court has already denied the motion; it is too late for the offending party to withdraw the challenged contention. *See* id. The district court did not err when it vacated the award of sanctions.

In re Walker, 532 F.3d at 1308-09. Even if a party seeking sanctions has not complied with the safe harbor provisions set forth in Rule 9011, the court in Walker determined:

> Federal courts, including bankruptcy courts, have the inherent power to impose sanctions on parties and lawyers. Byrne v. Nezhat, 261 F.3d 1075, 1121 (11th Cir. 2001); *see also* Mroz, 65 F.3d at 1572. To impose sanctions under these inherent powers, the court first must find bad faith. Mroz, 65 F.3d at 1575. "A finding of bad faith is warranted where an attorney

11

> knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." Byrne, 261 F.3d at 1121 (citations omitted). Sanctions are "especially appropriate where counsel takes frivolous legal positions supported by scandalous accusations." Amlong & Amlong, P.A., 500 F.3d at 1238. The court must afford the sanctioned party due process both in determining that the requisite bad faith exists and in assessing fees. Chambers v. NASCO, Inc., 501 U.S. 32, 49, 111 S.Ct. 2123, 2135, 115 L.Ed.2d 27 (1991).

In re Walker, 532 F.3d at 1309–10. *See also* Knight v. Luedtke (In re Yorkshire, LLC), 540 F.3d at 332 ("It is well-settled that a federal court, acting under its inherent authority, may impose sanctions against litigants or lawyers appearing before the court so long as the court makes a specific finding that they engaged in bad faith conduct."); Hale v. U.S. Trustee, 509 F.3d 1139, 1148 (9th Cir. 2007)("'bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court.' . . . 'These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'").

In Charbono v. Sumski (In re Charbono), 790 F.3d 80 (1st Cir. 2015), the United States Court of Appeals for the First Circuit upheld an award of a sanction of $100 imposed upon a debtor for failing to deliver a copy of his request for extension of the filing deadline for his federal income tax return to trustee within time allowed under terms of confirmed plan.[5] In Charbono, the First Circuit differentiated between criminal

---

[5] The First Circuit summarized the background as follows:

> Not having received a copy of either the debtor's tax return or an extension request, the Trustee filed a motion on June 13 alerting the bankruptcy court to the debtor's failure to comply with the tax return

contempt sanctions and "punitive non-contempt sanctions." Id at 85. It recognized that "a district court may, in appropriate circumstances, impose "punitive non-contempt sanctions." Id. at 85 (citations omitted). It also determined that bankruptcy courts, like other federal courts, have inherent sanctioning power beyond those expressly authorized by statute or rule. Id. at 86 (citing, inter alia Law v. Siegel, __ U.S. __, 134 S.Ct 1188, 1198 (2014)).[6]

---

production requirement. The Trustee's motion sought alternative relief: dismissal of the Chapter 13 bankruptcy or a $200 sanction. The debtor objected and belatedly furnished the Trustee with a copy of the by-then-approved extension request.

When the matter was heard before the bankruptcy court on September 20, the Trustee did not press for dismissal. He argued instead that the debtor's untimely compliance with the tax return production requirement was "sanctionable behavior." The debtor countered that no sanction was warranted because he had by then "purged" his noncompliance.

On September 24, the bankruptcy court entered an order imposing a $100 sanction on the debtor for his failure to comply with the tax return production requirement in a timeous manner. The debtor took a first-tier appeal to the district court. *See* 28 U.S.C. § 158(a), (c)(1). That court upheld the sanction. *See* Charbono v. Sumski, No. 13–471, 2014 WL 4922988, at *5 (D. N.H. Sept. 30, 2014). This timely second-tier appeal followed.

In re Charbono, 790 F.3d at 84 (footnote omitted).

[6] The Court of Appeals observed:

The courts of appeals consistently have recognized that bankruptcy courts may impose various forms of inherent-power sanctions. *See, e.g.*, Isaacson v. Manty, 721 F.3d 533, 538–39 (8th Cir. 2013); McGahren v. First Citizens Bank & Trust Co. (In re Weiss ), 111 F.3d 1159, 1171 (4th Cir. 1997); Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 477–78 (6th Cir. 1996); Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.), 77 F.3d 278, 284 (9th Cir. 1996); Glatter v. Mroz (In re Mroz ), 65 F.3d 1567, 1575 (11th Cir. 1995); Fellheimer, Eichen &

13

In Charbono, the First Circuit noted that the parties agreed that the debtor's failure to file the tax returns was inadvertent. Thus, it raised the issue of whether bad faith must be present to warrant sanctions. It stated:

> The argument for a bad-faith requirement prescinds from the Supreme Court's review of an inherent-power sanction in the form of an award of attorneys' fees. *See* Roadway Express, Inc. v. Piper, 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). The Roadway Express Court noted that "a finding [of bad faith] would have to precede any sanction under the court's inherent powers." Id. The Supreme Court later clarified this holding explaining that "nothing in the other sanctioning mechanisms or prior cases . . . warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct." Chambers, 501 U.S. at 50, 111 S.Ct. 2123 (emphasis supplied).
>
> For the most part, the courts of appeals have read these precedents narrowly, limiting them to instances in which an inherent-power sanction takes the form of an award of attorneys' fees. *See, e.g.,* United States v. Seltzer, 227 F.3d 36, 41–42 (2d Cir. 2000); Republic of the Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 74 n. 11 (3d Cir. 1994); Harlan, 982 F.2d at 1260. This limitation makes eminently good sense. The Roadway Express Court's reasoning took into account the venerable "American Rule," which provides that litigants ordinarily shall pay their own lawyers. *See* Roadway Express, 447 U.S. at 765–66, 100 S.Ct. 2455; *see also* Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Where an inherent-power sanction has the effect of reversing this rule, that sanction demands heightened justification. *See* Roadway Express, 447 U.S. at 765–66, 100 S.Ct. 2455. *But where an inherent-power sanction does not take the form of an award of attorneys' fees (and thus does not involve a departure from the American Rule), a finding of bad faith is not*

---

> Braverman, P.C. v. Charter Techs., Inc., 57 F.3d 1215, 1224 (3d Cir. 1995); Citizens Bank & Trust Co. v. Case (In re Case ), 937 F.2d 1014, 1023 (5th Cir. 1991). Our court has joined in this chorus. *See* Pearson v. First NH Mortg. Corp., 200 F.3d 30, 42 n. 7 (1st Cir. 1999). We therefore hold, without serious question, that bankruptcy courts possess the inherent power to impose punitive non-contempt sanctions for failures to comply with their orders.

Charbono, 790 F.3d at 87.

14

*ordinarily required*. *See* Seltzer, 227 F.3d at 40–42; United States v. Mottweiler, 82 F.3d 769, 772 (7th Cir.1996); Harlan, 982 F.2d at 1260; Mulvaney v. Rivair Flying Serv., Inc. (In re Baker ), 744 F.2d 1438, 1441–42 (10th Cir. 1984) (en banc); *see also* Romero–López, 661 F.3d at 108 (affirming imposition of inherent-power sanction, not in form of fee award, without requiring showing of bad faith); Sacramona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 447 (1st Cir. 1997) (same). It follows that the absence of bad faith does not serve to undermine the inherent-power sanction imposed by the bankruptcy court.

Of course, the absence of a bad faith requirement should not be thought to give the bankruptcy court free reign to impose sanctions without restraint. The admonition that "courts [are] to be cautious in using their inherent power to sanction" remains true. *See* Romero–López, 661 F.3d at 108 (citing Chambers, 501 U.S. at 44, 111 S.Ct. 2123). Here, however, we are satisfied that the bankruptcy court, in choosing this modest sanction (rather than, say, dismissing the Chapter 13 proceeding in its entirety), opted for "the least extreme sanction reasonably calculated to achieve the appropriate punitive and deterrent purposes." Kouri–Perez, 187 F.3d at 8.

In re Charbono, 790 F.3d at 87–88 (footnote omitted, emphasis added).

B. Analysis

The first issue the Court must address is whether Furtado's Motion is timely under both Fed. R. Bankr. P. 7054(b)(1) and Fed. R. Civ. P. 54 (d)(2)(B). The Court concludes that the Motion was timely filed because the Court's order of April 20, 2016 was not a final order. The Court, while granting the Trustee's Motion for Summary Judgment and authorizing him to sell the Debtor's vested remainder interest, delayed the effectiveness of that order "pending further order of the Court."

The second issue the Court must address is whether grounds exist to depart from the American Rule and award Furtado her attorney's fees and costs. Notably, sanctions under Fed. R. Bankr. P. 9011 are unavailable to Furtado due to her failure to comply with the safe harbor provision set forth in the rule. *See.* Fed. R. Bankr. P. 9011(c)(1)(A).

15

In addition, Furtado is not entitled to attorney's fees and costs under 28 U.S.C. § 1927, which provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Furtado neither cited nor addressed decisions under § 1927. *See* Castellanos Grp. Law Firm, L.L.C. v. Fed. Deposit Ins. Corp. (In re MJS Las Croabas Props., Inc.), 545 B.R. 401 (B.A.P. 1st Cir. 2016).[7]

---

[7] The court in MJS Las Croabas Props., Inc. stated:

> The "plain language of [§ 1927] restricts its operation to acts that 'multipl[y]' the proceedings." Jensen, 546 F.3d at 65 (quoting 28 U.S.C. § 1927). In the First Circuit's view, Congress' use of the verb "multipl[y]" in the text of the statute "clearly contemplates that, to be sanctionable thereunder, conduct must have an effect on an already initiated proceeding." Id. Litigation conduct qualifies as "vexatious" within the meaning of § 1927 if it is "'harassing or annoying, regardless of whether it is intended to be so.'" Lamboy–Ortiz v. Ortiz–Vélez 630 F.3d 228, 245 (1st Cir. 2010) (citation omitted). The First Circuit has also explained that § 1927 "does not apply to '[g]arden-variety carelessness or even incompetence,' but instead requires that the 'attorney's actions . . . evince a studied disregard of the need for an orderly judicial process, or add up to a reckless breach of the lawyer's obligations as an officer of the court.' " Id. at 245–46 (citation omitted).
>
> "The purpose of sanctions under § 1927 is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." In re Royal Manor Mgmt., Inc., 525 B.R. at 365 (citations omitted) (internal quotations omitted). "Unlike Rule 11 sanctions which focus on particular papers, the inquiry under § 1927 is on a course of conduct." Bowler v. U.S. Immigration and Naturalization Serv., 901 F.Supp. 597, 605 (S.D.N.Y. 1995) (citation omitted). As the Sixth Circuit aptly explained, "[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their

16

Furtado relies exclusively on the Court's inherent power to sanction. As the court observed in MJS Las Croabas Props., Inc., the "American Rule" is that generally "'each party bears its own attorney fees and litigation expenses.'" Id. at 417 (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), and New Eng. Surfaces v. E.I. DuPont de Nemours & Co., 558 F.Supp.2d 116, 122 (D. Me. 2008)), although narrow exceptions exist.

The Court concludes that this is not a case in which it should depart from the American Rule. In this regard, the Court is mindful of the recent decision of the

---

experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." Rathbun v. Warren City Schs. (In re Ruben), 825 F.2d 977, 984 (6th Cir. 1987).

Although some courts of appeals have construed § 1927's language, "unreasonably and vexatiously," to require a finding of subjective bad faith as a predicate to the imposition of sanctions, the First Circuit has not. Cruz v. Savage, 896 F.2d 626, 631–32 (1st Cir. 1990) (stating "we do not require a finding of subjective bad faith" to justify § 1927 sanctions) (citations omitted). In assessing whether an attorney acted unreasonably and vexatiously, the First Circuit instructs courts to apply an objective standard. Id. at 632. "[C]ommon sense suggests that [the trial judge] must be accorded wide latitude in drawing inferences as to when multiplication of the proceedings crosses the line between what is acceptable if tedious and what is unreasonable and vexatious." Jensen, 546 F.3d at 67. "Distinguishing between what is a vigorous but reasonable attempt to salvage a case that is going badly and a stubbornly capricious attempt to gain advantage by prolonging matters is not easy." Id. "The unique position occupied by a trial judge gives her an intimate familiarity with the ebb and flow of the cases on her docket." Id. "Appellate courts recognize, therefore, that they must defer in large measure to a trial judge's first-line authority for case-management decisions." Id. (citation omitted) (internal quotations omitted).

MJS Las Croabas Properties, Inc., 545 B.R. at 418–19.

Supreme Court in Baker Botts L.L.P. v. ASARCO, LLC, __ U.S. __, 135 S.Ct. 2158 (2015), in which the Court observed:

> Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252–253, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (internal quotation marks omitted). The American Rule has roots in our common law reaching back to at least the 18th century, *see* Arcambel v. Wiseman, 3 Dall. 306, 1 L.Ed. 613 (1796), and "[s]tatutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar [legal] principles," Fogerty v. Fantasy, Inc., 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (internal quotation marks and ellipsis omitted). We consequently will not deviate from the American Rule "'absent explicit statutory authority.'" Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (quoting Key Tronic Corp. v. United States, 511 U.S. 809, 814, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994)).
>
> We have recognized departures from the American Rule only in "specific and explicit provisions for the allowance of attorneys' fees under selected statutes." Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 260, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Although these "[s]tatutory changes to [the American Rule] take various forms," Hardt, *supra*, at 253, 130 S.Ct. 2149 they tend to authorize the award of "a reasonable attorney's fee," "fees," or "litigation costs," and usually refer to a "prevailing party" in the context of an adversarial "action," *see, e.g.*, 28 U.S.C. § 2412(d)(1)(A); 42 U.S.C. §§ 1988(b), 2000e–5(k); *see generally* Hardt, *supra*, at 253, and nn. 3–7, 130 S.Ct. 2149 (collecting examples).

Baker Botts L.L.P. v. ASARCO LLC, 135 S. Ct. at 2164. *See also* Charbono, 790 F.3d at 88 ("Where an inherent-power sanction has the effect of reversing this [American] rule, that sanction demands heightened justification."). Given the Supreme Court's statement that the American Rule is the bedrock principle of our judicial system, and the heightened justification required under Charbono, the Court concludes that conduct significantly more troublesome than that of the Defendant here must be proven before

18

this Court should impose a sanction in the form of payment of $15,000 in legal fees. The position espoused by the Defendant in this adversary proceeding was not devoid of merit, and this Court wrote a 20-page decision assessing the positions advanced by the Debtor and the Trustee, eventually ruling in the Trustee's favor. The Trustee's Complaint was filed on July 6, 2015 and the Court issued its decision approximately ten months later. There were no dilatory tactics on the Defendant's part in the conduct of the adversary proceeding.

Although Furtado argues that she was an innocent party and the Debtor acted in bad faith, her references to bad faith are insufficient to rebut the presumption that the American Rule should apply. Although from Furtado's point of view the Debtor may not have acted cooperatively in expeditiously selling the family property immediately after the death of their mother, the Debtors commenced their bankruptcy case to address debt, and the Defendant's attorney reported the existence of the "contingent remainder interest" to the Trustee. *See* In re Amaral, 550 B.R. at 2. The Trustee, while moving to reopen the Debtors' case and filing an adversary proceeding under 11 U.S.C. § 363(h), did not file an adversary proceeding to revoke the Debtor's discharge pursuant to 11 U.S.C. § 727(d)(2). Moreover, the Debtor did not initiate the adversary proceeding; rather the Trustee named both the Debtor and Furtado as defendants. Finally, the Debtor's defense as set forth in his Motion for Summary Judgment, as noted above, while not successful, was not frivolous. Under these circumstances, the Court concludes that the Debtor did not act unreasonably or in bad faith and, thus, Furtado is not entitled to attorney's fees and costs.

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order denying Furtado's Motion for Attorney's Fees and Costs.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: May 8, 2017